[No. 1394.]

D. H. RAY v. THE STATE.

1. PRACTICE—CIRCUMSTANTIAL EVIDENCE.—It is a settled rule of practice in this State that when the prosecution relies solely upon circumstantial evidence to secure the conviction of a defendant, it is incumbent on the trial court to instruct the jury in regard to the character of such evidence, as a part of the law of the case, and whether asked so to do or not.

2. SAME—CHARGE OF THE COURT.—No particular or definite form of language in which the court shall instruct the jury upon the character of circumstantial evidence is prescribed; but if the ideas conveyed by the charge are correct, and are so expressed as to meet the comprehension of the jury, it is sufficient.

3. SAME—THEFT—EVIDENCE.—In a prosecution for theft, there was evidence tending to establish a *bona fide* purchase by the accused of the alleged stolen property, but the trial court failed to charge the jury upon the issue thus presented. *Held*, that the omission was error, and that it was the duty of the court to instruct upon every phase of case made by the evidence.

4. SAME—NEW TRIAL.—See a state of case in which, in view of absent evidence for which a continuance was asked and refused, a new trial should have been awarded.

APPEAL from the District Court of Falls. Tried below before the Hon. B. W. Rimes.

The indictment charged the appellant and one James Wyers jointly with the theft of a steer, the property of C. W. Hickerson. A severance was granted upon the application of the appellant, and, after the trial and conviction of his co-defendant, he was placed upon his trial, which resulted in his conviction, with a two years term in the penitentiary assessed against him as punishment.

H. Rickelman was the first witness introduced by the State. He testified that in December, 1881, he resided in Marlin, Falls

county, Texas, and was engaged at that time in the conduct of a general mercantile, grocery and butcher business. John Doyle Price, a State's witness, superintended the butcher branch of the witness's business. The witness was then acquainted with the defendant and one James Wyers. On or about the twentieth day of that month, the defendant came to witness for some money, and said that he wanted to sell the witness two yearlings, which he had in Robinson's pasture, about one mile east from Marlin. Wyers was present during this conversation, but the witness did not remember that he had anything to say. The witness told the defendant that he would not purchase the animals unless he could see them. Thereupon the witness and the defendant rode out to Robinson's pasture together, but failed to find any cattle. They returned to town, and found Wyers, and it was agreed that at some future day, then designated but now forgotten by the witness, the defendant should meet the witness at Whitaker's pasture, where he had cattle, and point out the two yearlings, the witness promising to purchase them if they suited him. Something occurred to prevent the witness going to Whitaker's pasture to meet the defendant, and he sent his butcher, Price.

Price left town on the day agreed upon to meet the defendant at Whitaker's pasture, and returned the same day with both the defendant and Wyers, and in their presence reported to the witness that the brands on the yearlings were all right, whereupon the witness paid sixteen dollars for the animals, paying the money to the defendant. The defendant gave the witness no description of the animals at that time.

Shortly after this transaction, the witness, in company with the witness Price, Whitaker and others, went to the Whitaker pasture, and Price pointed out two yearlings as the ones purchased from the defendant. One was a black steer yearling, branded CW. The witness did not remember seeing an H branded on this animal. The other was a brown heifer yearling, branded PL. William H. Jones claimed and got the heifer yearling, and C. W. Hickerson claimed and got the black steer yearling. The witness told the defendant about Jones and Hickerson claiming the animals, and the defendant said: "It is a mistake; turn them loose." On the day that the witness went to the pasture he had these animals, with others, driven to Marlin by Price and another party. The witness and Whitaker rode ahead of the cattle into town. After C. W. Hickerson set

up his claim to the black yearling, the witness ordered Price not to butcher it, but to hold it at the pen.

On cross-examination the witness said that during the only conversation which he had with the defendant, and which was the same in which he told the witness to turn the animals loose, the defendant told the witness that he had purchased the animals from some party whose name the witness had forgotten, and that they were the same yearlings one Gibson had tried to purchase. The witness had never seen either the defendant or Wyers in possession of either of the animals, and did not know who put them in Robinson's pasture. The defendant described the animals merely as two yearlings. There were a great many black steer yearlings, and a great many brown heifer yearlings in Falls county.

John Doyle, f. m. c. (presumably the John Doyle Price spoken of by the first witness), testified, for the State, that in the months of November and December, 1881, he was in the employ of H. Rickelman as a butcher. He was present at Rickelman's store when Rickelman had the understanding with the defendant about the two yearlings. On the day set apart for Rickelman to go to Whitaker's pasture to meet the defendant and Wyers, Rickelman directed the witness to get on a mule and go to the appointed place, where the defendant and Wyers would point out some cattle to the witness. The witness reached the pasture early in the morning and found Charley Norwood and By Long there. These two parties worked for Mr. Whitaker. In a short while the defendant and Wyers arrived. They and the witness rode off into the pasture together, and they pointed out two yearlings to the witness. One·was a black steer yearling, branded CWH on the side, and the other a brown heifer yearling, branded PL. The defendant asked for some paper on which to put down the brands, and the witness gave him an old blank memorandum book. Defendant put in it some brands, one of which was the figure 7. The others the witness did not remember, but they were not the brands which were on the cattle. The defendant and Wyers returned with the witness to Marlin, and they reported to Mr. Rickelman.

A few days afterwards the witness went with Mr. Rickelman to the pasture and pointed out the two yearlings which had been pointed out to him by the defendant and Wyers. Upon the order of Mr. Rickelman, the witness then drove the two animals to Marlin, with some other cattle. Bob Clayton assisted him.

They met Mr. C. W. Hickerson at the edge of town, and Hickerson recognized and claimed the black steer yearling. The witness then, as directed by Mr. Hickerson, put the two animals in a pen and rode into Marlin and reported the facts to ·Mr. Rickelman. The witness had never seen either the defendant or Wyers in possession of the two yearlings, or about them, except at the time when they pointed them out as the animals they were selling Rickelman.. The witness did not know who put them into Robinson's pasture.

C. W. Hickerson testified, for the State, that on the twenty-ninth day of December, 1881, near Marlin, Texas, he met John Doyle Price and another freedman, driving his black steer yearling, with other cattle, towards Marlin from the direction of Whitaker's pasture. He recognized his animal before he got up to the bunch, by its flesh marks. It had his brand, CWH, on the side, also Rickelman's brand S,—which, according to the testimony of Price, had been put on after the animal was pointed out to· him by the defendant. The witness Hickerson never saw the defendant nor Wyers in possession of the animal, nor does he know of his own knowledge that they ever had possession of it. He did not give his consent to the taking of the animal.

Charley Norwood testified that he and By Long were at Whitaker's pasture when John Doyle Price came there to meet the defendant and Wyers. They were not there when Price got there, but arrived presently, and the three rode off into the pasture together. The witness saw no more of them.

Mark Howell, for the defense, testified that some time before Christmas, 1881, he saw John Doyle Price, near Marlin, driving a black steer yearling, which had an H and a W branded on it, and also a brindle or reddish colored heifer. He did not notice any brands on the heifer, or that either animal was marked.

He asked Price where he was "rushing them to," and he replied that he gathered them for Rickelman.

The appellant asked for a continuance in order to procure the testimony of George Wyers and R. M. Logan, residents of Falls county, by whom the appellant alleged that he could prove, in substance, that they saw the defendant purchase the identical yearling charged in this case to have been stolen, from one John Johnson, and that he purchased the said yearling from the said Johnson in good faith. The application further alleged that the defendant caused a subpœna to be issued for the said George

Wyers on the twenty-seventh day of February, 1882, which was duly executed, by the officer in whose hands it was placed, on the thirteenth day of March thereafter; that on the seventeenth day of July, 1882, the defendant caused an attachment to be issued for the said witness, which, on the nineteenth day of the same month, was duly executed, and the said witness placed under bond; that the said witnesses, George Wyers and R. M. Logan, were present in court on yesterday when this case was called for trial, and were sworn as witnesses herein, and placed under the rule; that neither of said witnesses are absent by the procurement or consent of the defendant; that this application was not made for delay, and that there was no reasonable expectation of being able to procure the attendance of said witnesses during the present term of court. The application alleged that the testimony desired could not be procured from any other source.

The application further alleged that when this case was called for trial on the previous day, and the defendant asked for a severance, which the court refused to entertain until both defendants announced ready for trial, the defendant announced ready for trial only that he might get a ruling on his application for a severance, and so informed the court, and he did not so announce ready for trial for the purpose of trial, but, if the court held such announcement to be an announcement for trial, then the applicant insisted that the above named witnesses being then in attendance upon court, under the processes described, and being sworn as witnesses and placed under the rule, their unexpected departure from the court house operated as a surprise to him, and such a surprise as to defeat a fair and impartial trial. The subpœnas, attachments, bonds, etc., with the officers' returns, were attached to the application as exhibits.

*Oltorf & Holland,* and *C. B. Pearre,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

WILLSON, J. The evidence upon which the conviction in this case is based is wholly circumstantial. It is well settled that in such case the court should instruct the jury in regard to the character of such evidence, as a part of the law of the case, whether requested to do so or not. There is no particular, definite form of language required to be used in giving such in-

structions. If the ideas are sufficient, and so expressed that the jury can readily comprehend the meaning of the language employed, the demand of the law will be satisfied. (*Henderson* v. *The State*, 14 Texas, 574; *Williams* v. *The State*, 41 Texas, 207; *Hampton* v. *The State*, 1 Texas Ct. App:, 652.) These cases may be referred to as correct guides in framing a proper charge upon circumstantial evidence. In the case at bar the court failed to give the jury any charge upon circumstantial evidence, and therefore failed to give in charge all the law applicable to the case. (*Hunt* v. *The State*, 7 Texas Ct. App., 212; *Barr* v. *The State*, 10 Texas Ct. App., 507; *Gonzales* v. *The State*, 12 Texas Ct. App., 657; *Ward* v. *The State*, 10 Texas Ct. App., 293.)

There is some evidence in this case tending to establish that the defendant had *bona fide* purchased the steer alleged to have been stolen by him. The court in its charge did not submit this issue to the jury, and in failing to do so, we think there was error. (*Vincent* v. *The State*, 9 Texas Ct. App., 303; *Henry* v. *The State*, Id., 358; *Scott* v. *The State*, 10 Texas Ct. App., 112; *Bennett* v. *The State*, 12 Texas Ct. App., 15.)

The evidence in this case is, to our minds, unsatisfactory and not sufficient to support the conviction when tested by the rules of law. The defendant, when his case was called for trial, applied for a continuance because of the absence of two witnesses, by whom he states he expected to prove that he purchased the alleged stolen animal in good faith. He shows that he had used due diligence to procure the testimony of these witnesses. His application was overruled, and upon the trial there was some evidence tending to show that he had purchased the animal. The facts which he states he expected to prove by the absent witnesses were certainly material to his defense, and, in view of the other evidence in the case, they should have been regarded by the court as probably true; and, without passing upon the question of the sufficiency of defendant's application for a continuance, we think the court erred in refusing to grant him a new trial.

The judgment is reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

Opinion delivered October 21, 1882.